IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HSH DELAWARE GP LLC, *et al.*,[1]<br><br>             Debtors. | Chapter 11<br><br>Case No. 10-_____ (___)<br><br>(Joint Administration Requested) |

## DEBTORS' MOTION PURSUANT TO SECTION 1505 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO ACT AS THE FOREIGN REPRESENTATIVES OF THEIR ESTATES IN CANADA

HSH Alberta I L.P. ("Alberta I"), HSH Alberta II L.P. ("Alberta II"), HSH Alberta V L.P. ("Alberta V"), HSH Coinvest (Alberta) L.P. ("Alberta Coinvest" and together with Alberta I, Alberta II, and Alberta V, the "Alberta Debtors"), JCF HSH (DE) GP LP ("JCF HSH"), and HSH Delaware GP LLC ("HSH Delaware GP" and together with the JCF HSH and the Alberta Debtors, collectively, the "Voluntary Debtors"), and HSH Luxembourg S.à r.l. ("HSH Luxembourg"), HSH Delaware L.P. ("HSH Delaware L.P."), and HSH Luxembourg Coinvest S.à r.l. ("HSH Luxembourg Coinvest," and together with HSH Luxembourg and HSH Delaware L.P., the "Involuntary Debtors," and together with the Voluntary Debtors, the "Debtors"), as debtors and debtors in possession, hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, authorizing the Alberta Debtors to take the following actions: (i) act as the foreign representatives of their estates in Canada; (ii) seek recognition of their bankruptcy cases on behalf of their estates; (iii) request that the Court of Queen's Bench of Alberta (the "Alberta Court") lend assistance to this Court in

---

[1] The Debtors in these cases, along with the last four (4) digits of each Debtor's federal tax identification number (if applicable), are: HSH Delaware GP LLC, HSH Alberta I L.P. (No. 6492), HSH Alberta II L.P. (No. 1821), HSH Alberta V L.P. (No. 6854), HSH Coinvest (Alberta) L.P. (No. 1592), JCF HSH (DE) GP LP, HSH Luxembourg S.à r.l. (No. 6862), HSH Delaware L.P. (No. 9336), and HSH Luxembourg Coinvest S.à r.l. (No. 6826).

protecting the property of the Alberta Debtors' estates; and (iv) seek any other appropriate relief from the Alberta Court that the Alberta Court deems just and proper. In support of this Motion, the Debtors rely on the *Affidavit of Daniel Katsikas in Support of Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "Katsikas Affidavit"), and further respectfully represent as follows:

## Background

1. On the date hereof (the "Commencement Date"), each of the Voluntary Debtors filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code. On September 8, 2009, involuntary petitions for relief under chapter 7 of the Bankruptcy Code (the "Chapter 7 Cases") were filed in this Court with respect to the Involuntary Debtors. Contemporaneously herewith, the Involuntary Debtors have filed a motion to convert the Chapter 7 Cases to cases under chapter 11 of the Bankruptcy Code (the "Conversion Motion"), an affidavit in support of the Conversion Motion, and a motion to shorten the notice period for the Conversion Motion requesting that it be considered by the Court prior to the Motion. Each of the Debtors is authorized to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

## Jurisdiction and Venue

2. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Preliminary Statement

3. The Debtors have limited connections to certain jurisdictions outside of the United States. Specifically, among other things, the Alberta Debtors are Alberta limited

partnerships. The Debtors are concerned that certain parties whose interests are at odds with the interests of the Debtors and their stakeholders may avail themselves of the Alberta Court in an attempt to dissolve and liquidate the Alberta Debtors' assets. Although these assets theoretically are within this Court's *in rem* jurisdiction, such assets currently lie outside of this Court's grasp and control. To protect against the risk of seizure, the Debtors intend to seek, in the Alberta Court, recognition of the chapter 11 cases of the Alberta Debtors as foreign main proceedings and entry of a stay protecting the Alberta Debtors' assets, pursuant to sections 46, 47, and 48 of the Companies' Creditors Arrangement Act (the "CCAA"), which enacts into Canadian law the UNCITRAL Model Law on Cross-Border Insolvency (the "Model Law" and, with the accompanying Guide to Enactment, the "Guide to Enactment").[2] In order to do so, the Alberta Debtors must submit with their application to the Alberta Court an order from this Court appointing the Alberta Debtors as foreign representatives of their estates.

## Debtors' Businesses

### A. *The HSH Entities.*

6. In 2006, J.C. Flowers & Co. LLC ("JCF") advised[3] seven investment vehicles in their collective acquisition from WestLB AG (the "Acquisition") of approximately 26% of the then-outstanding shares of HSH Nordbank AG ("HSH Nordbank"),[4] a large German

---

[2] *See* MODEL LAW ON CROSS-BORDER INSOLVENCY WITH GUIDE TO ENACTMENT (UNCITRAL 1999), U.N. Commission on International Trade Law, G.A. Res. 52/158, U.N. GAOR 30th Sess., Supp. No. 17, U.N. Doc. A/52/17 (1997), *available at* http://www.uncitral.org/uncitral/en/uncitral_texts/insolvency/1997Model.html.

[3] Since its inception in 2000, investment funds advised by JCF have invested over $10 billion in equity capital in more than 20 separate transactions. JCF advises three primary private equity funds, J.C. Flowers Fund I, J.C. Flowers Fund II and J.C. Flowers Fund III. Investors in J.C. Flowers Fund II participated in the Acquisition (defined below) and are the investors that are relevant to the matters discussed herein. Three funds, J.C. Flowers II LP, J.C. Flowers II-A LP and J.C. Flowers II-B LP, comprise J.C. Flowers Fund II. These funds' investors include high net worth individuals and institutional investors, among others.

[4] HSH Nordbank is a commercial bank that focuses on ship and aviation financing, international real estate lending, and large corporate banking. HSH Nordbank is the largest shipping bank globally by reported shipping loans - currently its balance sheet shows assets of approximately €186 billion.

3

bank with registered offices in Hamburg and Kiel, for an aggregate purchase price of €1.25 billion.[5] Each of the seven investment vehicles is an independent trust formed for the purpose of indirectly acquiring and holding HSH Nordbank shares and whose beneficiaries are primarily investors in J.C. Flowers Fund II (the "Trusts").[6] The Trusts each formed a limited partnership or equivalent entity (the Alberta Debtors and the Involuntary Debtors, collectively, the "Shareholder Debtors")[7] through which to acquire and hold the HSH Nordbank shares. The reason this structure was used at the time of the Acquisition was in order to allow the Shareholder Debtors to be managed and controlled independently of one another, which was principally in order to avoid any regulatory delays with the Acquisition that might have arisen had J.C. Flowers Fund II been considered as controlling 25% or more of the shares in HSH Nordbank.

### B. *The Credit Agreements*.

7. To partially finance the Acquisition, the Shareholder Debtors, as "Borrowers," each entered into virtually identical credit agreements, dated October 19, 2006, with ABN AMRO Bank N.V., London Branch ("ABN") as "Facility Agent" and ABN AMRO Bank N.V. as the original "Lender" (collectively, the "Credit Agreements"), to lend a total of

---

[5] A majority of HSH Nordbank's shares have been held by the City of Hamburg and the State of Schleswig-Holstein. The remaining shares are held by German savings banks and entities owned by investors in funds advised by JCF.

[6] As beneficiaries of the Trusts, investors in J.C. Flowers Fund II have at all times held in excess of 99.9% of the beneficial interest in Alberta I, Alberta II and Alberta V. Certain of these investors also elected to co-invest in the HSH Nordbank investment through a fourth Trust, and such co-investors own in excess of 99.9% of the beneficial interest in Alberta Coinvest. The *de minimis* balance of the beneficial interest in each case is held by the relevant limited partnership's general partners.

[7] The Shareholder Debtors are organized in different jurisdictions to accommodate the needs of certain of the Trusts' ultimate beneficiaries.

€375,000,000.[8] The Credit Agreements were arranged and structured based upon a business plan that projected HSH Nordbank's future performance, stock dividends, and finance costs.

8. Under each Credit Agreement, there are two unsecured credit facilities. One is the term loan (the "Term Loan") that was used to finance the Acquisition. The Term Loans were required to be paid in full on October 19, 2011. Further, as the Shareholder Debtors do not generate any income other than any dividend payment from HSH Nordbank, the Credit Agreement also included revolving credit loans (the "Revolving Credit Loans") to be used as "bridge" facilities for servicing the interest accruing on the Term Loans during the period between dividend payment dates. Because the HSH Nordbank dividend was paid, at most, annually, and only if HSH Nordbank's balance sheet reflected a profit, the Revolving Credit Loans were necessary to fund the interest payments on the Term Loans. Each Revolving Credit Loan was to be for an agreed term of one, two, three or six months, and was required to be repaid in full on the last day of the term of such Revolving Credit Loan.

C. *The July 2008 Recapitalization and The Bankruptcy Filings.*

9. In early 2008, HSH Nordbank came to the conclusion that a recapitalization of the bank was needed. Therefore, a recapitalization of HSH Nordbank occurred in July 2008 (the "July 2008 Recapitalization"), whereby HSH Nordbank issued 17,490,909 mandatory convertible shares, of which Alberta I, Alberta II, Alberta V, HSH Delaware L.P. and HSH Luxembourg purchased a combined 5,140,584 shares (the "Mandatory Convertible Shares") on or about August 7, 2008.[9] The Mandatory Convertible Shares are

---

[8] Of this €375,000,000, €350,000,000 was actually funded on the date of closing pursuant to the Term Loans (defined herein) provided for in the Credit Agreements, with an additional €25,000,000 available pursuant to the Revolving Credit Loans provided for in the Credit Agreements.

[9] Alberta Coinvest did not purchase any mandatory convertible shares.

currently held in custody at the respective bank accounts of these Debtors and will convert automatically in December 2010.

10. In connection with the July 2008 Recapitalization, the Shareholder Debtors became aware of and notified ABN that certain financial covenant obligations, including an asset cover covenant and an interest cover covenant in the Credit Agreements, needed to be reset.[10]

11. The parties thereafter engaged in negotiations to restructure the Credit Agreements in order to reset these financial covenant obligations and adjust the debt service terms on a go forward basis. During the negotiations, the Shareholder Debtors were faced with a January 2009 payment date, which included Revolving Credit Payments and a payment on certain interest on the Term Loans under each of the Credit Agreements. Issues related to debt service terms were the subject of the parties' negotiations, and, thus, on January 20, 2009, ABN agreed in writing to "roll the loans forward for one month which will allow us [the parties] to continue and finalise [sic] our discussions on the term sheet during February ready for the new terms to commence thereafter." ABN thereafter continued, through further rollover notices delivered each month (and sometimes twice a month), to rollover the January payment, the last of which was received by each Debtor in August 2009 and rolled the January payments through September 11, 2009.[11]

---

[10] The asset coverage covenant required the Shareholder Debtors to ensure that the ratio of total liabilities to total assets does not exceed 0.30 to 1 (*see* Credit Agmts. § 18.3), and the interest cover covenant required the Shareholder Debtors to ensure that the ratio of its net dividends received from HSH Nordbank to its net finance cost is greater than, (i) for the first two years of the Credit Agreements, 1.25 to 1, and (ii) thereafter, 1.50 to 1.

[11] ABN also sent Alberta I a rollover notice on September 9, 2009 despite earlier having sent this borrower an acceleration notice, presumably in error and as a result of its past course of dealing under the Credit Agreements.

RLF1 3504539v.4

6

12. While the Shareholder Debtors were awaiting a response from ABN regarding the outstanding restructuring proposal, on September 8, 2009, the Lenders delivered acceleration notices to each of the Shareholder Debtors (the "Acceleration Notices"). The Acceleration Notices referred to the earlier Reservation of Rights Letters and demanded immediate repayment of all amounts outstanding under the Credit Agreements, including the Term Loans that were not due until October 2011.

13. On the same day that the Lenders delivered the Acceleration Notices, the Lenders filed winding up petitions in the Cayman Islands against HSH Cayman I GP Ltd ("Cayman I"), HSH Cayman II GP Ltd ("Cayman II"), HSH Cayman V GP Ltd ("Cayman V"), and HSH Coinvest (Cayman) GP Ltd. ("Cayman Coinvest" and together with Cayman I, Cayman II and Cayman V, the "Cayman GPs")[12] in the Cayman Islands Court (the "Grand Court"), under the respective case numbers 425 of 2009, 426 of 2009, 427 of 2009, and 428 of 2009 (the "Winding Up Petitions"). On November 13, 2009, the Grand Court ordered the winding up of the Cayman GPs, and appointed PricewaterhouseCoopers ("PWC") as liquidators; however, on December 9, 2009, the Cayman Islands Court of Appeal dismissed the Winding Up Petitions, discharging PWC (as of December 16, 2009) and remitted the matter back to the Grand Court. On December 16, 2009, the Grand Court granted the Lenders permission to amend the Winding Up Petitions, but dismissed the Lenders' application to appoint provisional liquidators. The Lenders subsequently amended the Winding Up Petitions, and such amended Winding Up Petitions are scheduled to be heard by the Grand Court on January 26 and 27, 2010.

14. Additional information regarding Debtors' business, capital structure, and the circumstances leading to these chapter 11 filings is contained in the Katsikas Affidavit.

---

[12] Cayman I, Cayman II, Cayman V and Cayman Coinvest are each Cayman Islands companies, and are the general partners of Alberta I, Alberta II, Alberta V and Alberta Coinvest, respectively. The Cayman GPs are not Debtors in these Chapter 11 Cases.

7

## Relief Requested

15. By this Motion, the Alberta Debtors seek authorization, pursuant to section 1505 of the Bankruptcy Code, to take the following actions: (i) act as the foreign representatives of their estates in Canada; (ii) seek recognition of their chapter 11 cases on behalf of their estates; (iii) request that the Alberta Court lend assistance to this Court in protecting the property of the Alberta Debtors' estates; and (iv) seek any other appropriate relief from the Alberta Court that the Alberta Court deems just and proper.

## Basis for the Relief Requested

16. Section 1505 of the Bankruptcy Code allows a debtor in possession to obtain a court order recognizing the debtor in possession as the foreign representative of the debtor's estate, in order to submit a petition to a foreign court requesting recognition of the debtor's chapter 11 case. Specifically, section 1505 of the Bankruptcy Code provides:

> A trustee or another entity (including an examiner) may be authorized by the court to act in a foreign country on behalf of an estate created under section 541. An entity authorized to act under this section may act in any way permitted by the applicable foreign law.

11 U.S.C. § 1505. Section 1505 only applies to cases filed under chapters other than chapter 15 of the Bankruptcy Code because a chapter 15 case does not create an estate under section 541. For chapter 11 cases, authority to act as a foreign representative may be granted to the debtor in possession because a "trustee," as defined by section 1502(6) of the Bankruptcy Code, "includes . . . a debtor in possession in a case under any chapter of this title." *Id.* § 1502(6).

17. The purpose of section 1505 is to allow a debtor to petition a foreign court for recognition of its chapter 11 case, and to request that the foreign court cooperate with and lend assistance to the debtor and the United States Bankruptcy Court in meeting the objectives of

both chapter 15 of the Bankruptcy Code and the Model Law, on which chapter 15 is based. These objectives are stated in section 1501 of the Bankruptcy Code:

> (a) The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
>> (1) cooperation between—
>>> (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>>>
>>> (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>>
>> (2) greater legal certainty for trade and investment;
>>
>> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>>
>> (4) protection and maximization of the value of the debtor's assets; and
>>
>> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

*Id.* § 1501.[13] Thus, the authority sought by a debtor under section 1505 is specific to seeking recognition of the debtor's chapter 11 case and fostering cooperation between the bankruptcy court and foreign courts.

18. An explicit grant of authority to act as the foreign representative is meant to facilitate the process of petitioning for recognition in a foreign court. For this reason, Article

---

[13] The preamble of the Model Law is virtually identical:
> The purpose of this Law is to provide effective mechanisms for dealing with cases of cross-border insolvency so as to promote the objectives of:
>
> (a) Cooperation between the courts and other competent authorities of this State and foreign States involved in cases of cross-border insolvency;
>
> (b) Greater legal certainty for trade and investment;
>
> (c) Fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested persons, including the debtor;
>
> (d) Protection and maximization of the value of the debtor's assets; and
>
> (e) Facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

9

5 of the Model Law provides that the person or body administering a reorganization or liquidation in a country that has enacted the Model Law (an "Enacting State") "is authorized to act in a foreign State on behalf of a proceeding under . . . the laws of the enacting State relating to insolvency." Model Law Art. 5. The Guide to Enactment explains that

> [t]he lack of such authorization in some States has proved to be an obstacle to effective international cooperation in cross-border cases. An [E]nacting State in which administrators are already equipped to act as foreign representatives may decide to forgo inclusion of article 5, although even such a[n Enacting] State might want to keep article 5 in order to provide clear statutory evidence of that authority.

*See* Guide to Enactment ¶ 84. Clear evidence of a chapter 11 debtor's authority to act in a foreign country is particularly necessary because a chapter 11 case commences immediately upon the filing of a petition, with no order signed by the court that explicitly appoints the debtor as the fiduciary or trustee of the debtor's estate. The fact that a chapter 11 debtor has this authority by virtue of being a debtor in possession may not be persuasive to a foreign court.

19. Moreover, absent a court order, a chapter 11 debtor may find it difficult to satisfy the requirements of a petition for recognition. These requirements are substantially similar in most countries that have adopted the Model Law, including Canada. Specifically, section 46 of the CCAA (which is similar to Article 15.2 of the Model Law) provides that an application for recognition of a foreign proceeding shall be accompanied by

> (a) a certified copy of the instrument, however designated, that commenced the foreign proceeding or a certificate from the foreign court affirming the existence of the foreign proceeding;
>
> (b) a certified copy of the instrument, however designated, authorizing the foreign representative to act in that capacity or a certificate from the foreign court affirming the foreign representative's authority to act in that capacity; and
>
> (c) a statement identifying all foreign proceedings in respect of the debtor company that are known to the foreign representative.

10

Because of the differences between chapter 11 of the Bankruptcy Code and most other national insolvency laws, a chapter 11 debtor generally does not have the type of evidence specified above. Congress therefore modified the text of Article 5 of the Model Law when incorporating it into section 1505 of the Bankruptcy Code. The legislative history to section 1505 explains the reason for this variance in the text as codified by chapter 15:

> While the Model Law automatically authorizes an administrator to act abroad, this section requires all trustees and debtors to obtain court approval before acting abroad. That requirement is a change from the language of the Model Law, but one that is purely internal to United States law. Its main purpose is to ensure that the court has knowledge and control of possibly expensive activities, but it will have the collateral benefit of providing further assurance to foreign courts that the United States debtor or representative is under judicial authority and supervision.

*See* H.R. Rep. No. 109-31, pt. 1, 108 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 171.

20. The relief sought by this Motion is, therefore, the first in a two step process. If granted, the Alberta Debtors expect in due course to submit an application to the Alberta Court that seeks recognition of their chapter 11 cases as foreign main proceedings.

21. Consistent with one of the key objectives of the Model Law – to provide "[c]ooperation between the courts and other competent authorities . . . involved in cases of cross-border insolvency" (Model Law, preamble) – the application for recognition that the Alberta Debtors will file, if this Motion is granted, will seek to obtain the assistance of the Alberta Court for the benefit of this Court and the Alberta Debtors' estates and creditors. If the Alberta Court decides to recognize the Alberta Debtors' chapter 11 cases as foreign main proceedings, the Alberta Debtors will benefit from the protection of an automatic stay against commencement or continuation of actions or proceedings concerning the Alberta Debtors' assets, rights, obligations, and liabilities. Even if the Alberta Court holds that the Alberta Debtors' chapter 11

11

cases are not main proceedings, the Alberta Court has discretion to order a stay. In addition, the foreign representatives can seek a wide range of relief from the Alberta Court where it is necessary to protect the assets of the Alberta Debtors' estates or the interests of their creditors. Based on the foregoing, the Debtors submit that there is sufficient statutory basis and ample justification for this Court to grant the relief requested.

## Notice

4. No trustee or examiner has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the Office of the United States Trustee for the District of Delaware, (ii) the attorneys for ABN, and (iii) those creditors holding the 20 largest unsecured claims against the Debtors' estates (on a consolidated basis).[14] The Debtors submit that no other or further notice need be provided.

## No Prior Request

5. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

---

[14] Excluding "insiders" as defined in section 101(31) of the Bankruptcy Code, there exists only 11 creditors of the Debtors on a consolidated basis.

WHEREFORE the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as it deems just and proper.

Dated: January 21, 2010
      Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Proposed Attorneys for Debtors
and Debtors in Possession*

13

RLF1 3504539v.4

# EXHIBIT A

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **HSH DELAWARE GP LLC,** *et al.*,[1] | ) | Case No. 10-_____ (___) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Re: Docket No. _____ |

## ORDER AUTHORIZING THE DEBTORS TO ACT AS THE
## FOREIGN REPRESENTATIVES OF THEIR ESTATES IN CANADA

Upon the motion (the "Motion") of HSH Delaware L.P. and its related debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to section 1505 of title 11 of the United States Code (the "Bankruptcy Code") for authorization for the Alberta Debtors[2] to act as the foreign representatives of their estates in Canada, to seek recognition of their chapter 11 cases on behalf of their estates, and to request that the Court of Queen's Bench of Alberta (the "Alberta Court") lend assistance to this Court in protecting the property of the Alberta Debtors' estates, and to seek any other appropriate relief from the Alberta Court that the Alberta Court deems just and proper, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

---

[1] The Debtors in these cases, along with the last four (4) digits of each Debtor's federal tax identification number (if applicable), are: HSH Delaware GP LLC, HSH Alberta I L.P. (No. 6492), HSH Alberta II L.P. (No. 1821), HSH Alberta V L.P. (No. 6854), HSH Coinvest (Alberta) L.P. (No. 1592), JCF HSH (DE) GP LP, HSH Luxembourg S.à r.l. (No. 6862), HSH Delaware L.P. (No. 9336), and HSH Luxembourg Coinvest S.à r.l. (No. 6826).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

RLF1 3504539v.4

proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

    1.    The Motion is granted.

    2.    The Alberta Debtors are hereby authorized (a) to act as the foreign representatives of their estates in Canada, (b) to seek recognition of their chapter 11 cases on behalf of their estates, (c) to request that the Alberta Court lend assistance to this Court in protecting the property of their estates, including, without limitation, implementing a stay against the commencement or continuation of actions or proceedings concerning the Albert Debtors' assets, rights, obligations and liabilities, and (d) to seek any other appropriate relief from the Alberta Court that the Alberta Court deems just and proper in the furtherance of the protection of the Alberta Debtors' estates.

    3.    This Court shall retain jurisdiction to interpret and enforce this Order.

Dated: January ___, 2010
       Wilmington, Delaware

                                              THE HONORABLE PETER J. WALSH
                                              UNITED STATES BANKRUPTCY JUDGE